UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE BOARD OF TRUSTEES OF THE             Case No. 09-cv-13201
CITY OF BIRMINGHAM EMPLOYEES'
RETIREMENT SYSTEM, ET AL,                Hon. Stephen J. Murphy, III

      Plaintiffs,

v.

COMERICA BANK,

      Defendant/Third-Party Plaintiff,

v.

MUNDER CAPITAL MANAGEMENT,

      Third-Party Defendant.

**MOTION FOR APPLICATION OF PLAINTIFFS' COUNSEL FOR AN
AWARD OF ATTORNEY FEES AND EXPENSES**

For the reasons set forth in the attached Brief in Support of this Motion, Plaintiffs' Counsel respectfully request that this Court award $3,261,745.19 in fees, reflecting 30% of the Gross Settlement fund after the deduction of reimbursed expenses, and $127,516.02 in expenses, as set forth in the proposed order attached as Exhibit A to the Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds.

Respectfully submitted,

**THE MILLER LAW FIRM, P.C.**
Attorneys for Plaintiffs

By: /s/ E. Powell Miller
E. POWELL MILLER (P39487)
MARC L. NEWMAN (P51393)
CHRISTOPHER D. KAYE (P61918)
950 West University Drive, Suite 300
Rochester MI 48307
248-841-2200
epm@millerlawpc.com

**SULLIVAN, WARD, ASHER & PATTON, P.C.**
Attorneys for Plaintiffs

By: /s/ Gerard J. Andree (w/ permission)
GERARD J. ANDREE (P25497)
MICHAEL J. ASHER (P39347)
25800 Northwestern Highway
1000 Maccabees Center
Southfield, MI 48075
Telephone: 248.746.2731
Facsimile: 248.746.4805
gandree@swappc.com

**GLANCY BINKOW & GOLDBERG LLP**
Attorneys for Plaintiffs
Lionel Glancy
Peter Binkow
Glancy Binkow & Goldberg LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067

**ROBINS GELLER RUDMAN & DOWD LLP**

Paul J. Geller
Stephen R. Astley
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364

Dated: November 14, 2013

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE BOARD OF TRUSTEES OF THE           Case No. 09-cv-13201
CITY OF BIRMINGHAM EMPLOYEES'
RETIREMENT SYSTEM, ET AL,              Hon. Stephen J. Murphy, III

      Plaintiffs,

v.

COMERICA BANK,

      Defendant/Third-Party Plaintiff,

v.

MUNDER CAPITAL MANAGEMENT,

      Third-Party Defendant.

**BRIEF IN SUPPORT OF APPLICATION OF PLAINTIFFS' COUNSEL
FOR AN AWARD OF ATTORNEY FEES AND EXPENSES**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ ii

I. INTRODUCTION ...............................................................................1

II. AWARD OF ATTORNEY FEES ......................................................4

    A.    Lead Plaintiff's Counsel Are Entitled to a Fee From the Traditional Common Fund They Obtained ................................................4

    B.    The Court Should Award Attorney Fees Using the Percentage Approach ...............................................................................5

    C.    The Requested Percentage is Appropriate When Compared to the Range of Percentage-of-Fund Awards ...................................8

    D.    Consideration of the Relevant Factors Justifies an Award of a Thirty Percent Fee in This Case ......................................................9

        1.    The Value of the Benefit Achieved ...........................................9

        2.    Public Policy Considerations ...................................................10

        3.    The Risks of Litigation and the Contingent Nature of the Fee.12

        4.    The Value of Services on an Hourly Basis ..............................15

        5.    The Complexity of the Litigation ............................................16

        6.    The Quality of the Representation ............................................17

    E.    Plaintiffs' Counsel's Expenses are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained ...........................18

III. CONCLUSION..................................................................................20

i

# TABLE OF AUTHORITIES

## *Cases*

*Abrams v. Lightolier, Inc.,* 50 F.3d 1204 (3d Cir. 1995) ............................19

*Anixter v. Home-Stake Prod. Co.,* 77 F.3d 1215 (10th Cir. 1996) .........................14

*Arenson v. Bd. of Trade*, 372 F. Supp. 1349 (N.D. Ill. 1974)................................17

*Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).........................................7

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990)..............................14

*Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 640 F. Supp. 697 (S.D. Ohio 1986) ..............................................................................12

*BCBS v. Wells Fargo*, No. 11-2529 (D. Minn. August 9, 2013) ............................15

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534(S.D. Fla. 1988) (....................10

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979)...............14

*Blanchard v. Bergeron*, 489 U.S. 87 (1989)..............................................6

*Bleznak v. C.G.S. Scientific Corp.*, 387 F. Supp. 1184 (E.D. Pa. 1974)................11

*Blum v. Stenson*, 465 U.S. 886 n.16 (1984) ..............................................5

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) .........................................4

*Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261 (S.D. Ohio 1996) ...............................7

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722 (10th Cir. 1993) ......18

*Brown v. Phillips Petroleum Co.*, 838 F.2d 451 (10th Cir. 1988)...........................7

*Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) ..................................6

*Court Awarded Attorney Fees*, 108 F.R.D. 237 (October 8, 1985)..........................8

*Facility*, 173 F.R.D. 205 (S.D. Ohio 1997) ...............................................7

*F&M,* 1999 U.S. Dist. LEXIS 11090, at *19-20 (multiplier of 1.35) ....................15

*Geffon v. Micrion Corp.*, 249 F.3d 29 (1st Cir. 2001).....................................14

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) .............................8

*Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) ..........................................7

*Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999)...............................14

*Green v. Nuveen Advisory Corp.*, 295 F.3d 738 (7th Cir. 2002) ............................14

*Harman v. Lyphomed, Inc.*, 945 F.2d 969 (7th Cir. 1991) .......................................8

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994)......................................18

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)................................................10

*Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) ...............14

*In re Cardizem CD Antitrust Litig.*, No. 99-md-1278, Order (E.D. Mich. Nov. 26, 2002) ..............................................................................15

*In re Comshare Inc. Sec. Litig.*, 183 F.3d 542 (6th Cir. 1999)................................14

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) ..............................................................................12

*In re Folding Carton Antitrust Litigation*, 84 F.R.D. 245, 261 (D.C.Ill., 1979) ..3,10

*In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610 (D. Colo. 1976) .........................16

*In re Lason, Inc. Sec. Litig.*, No. 99-CV-76079, Order and Final Judgment (E.D. Mich. Mar. 31, 2003) ..............................................................................................15

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394 (E.D. La. May 18, 1994) ..............................................................................13

*In re Sirrom Capital Corp. Sec. Litig.*, No. 3-98-0643 (M.D. Tenn. Feb. 4, 2000) ..8

*In re Superior Beverage/Glass Container Consolidated Pretrial*, 133 F.R.D. 119, 131 (N.D. Ill. 1990)...........................................................................................15

*In re Telectronics Pacing Sys.*, 186 F.R.D. 459 (S.D. Ohio 1999)............................6

*Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503-04 (E.D. Mich. 2000)15

*Levitin v. Painewebber, Inc.*, 159 F.3d 698 (2d Cir. 1998) .....................................14

*Lindy Bros. Builders v. American Radiator*, 540 F.2d 102 (3d Cir. 1975) ..............3

*Longman v. Food Lion, Inc.*, 197 F.3d 675 (4th Cir. 1999) ....................................14

*Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679 (M.D. Ala. 1988)................5

*Miller v. Woodmoor Corp.*, Nos. 74-F-988, 76-F-567, 1978 WL 1146 (D. Colo. Sept. 28, 1978) ..............................................................................................16

*Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235 (S.D.N.Y. 1993) ...............19

*Missouri v. Jenkins*, 491 U.S. 274 (1989).................................................................8

*Morse v. McWhorter*, No. 3:97-0370 (M.D. Tenn. Mar. 12, 2004) .........................8

*Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999) .........................................14

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974) ......................11

*Rawlings v. Prudential Bache-Props.*, 9 F.3d 513 (6th Cir. 1993) ............... 6, 9, 10

*Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997)......................................14

*Silver v. H&R Block*, 105 F.3d 394 (8th Cir. 1997).................................................14

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939) ................................................6

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993)...............................7

*Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1988) ( ...........................14

*Warner Commc'ns Sec. Litig.*,, 618 F. Supp. 735 (S.D.N.Y. 1985) ........... 11, 12, 17

*White v. Abrams*, 495 F.2d 724 (9th Cir. 1974).....................................................11


G. Hornstein, *Legal Therapeutics: The Salvage Factor in Counsel Fee Awards*, 69

## <u>ISSUES PRESENTED</u>

Should the Court grant Plaintiffs' Counsel their requests fees and reimbursement of litigation expenses?

Plaintiffs' counsel says yes.

# MOST CONTROLLING AUTHORITY

## Cases

*Boeing Co. v Van Gemert*, 444 US 472 (1980)

## I.    INTRODUCTION

Counsel for Plaintiffs in this complex financial class action respectfully submit this memorandum of law in support of their request for an award of attorney fees of 30% of the Settlement Fund after the deduction of litigation expenses, plus their litigation expenses of $127,516.02.  The substantial and certain recovery obtained for the Class –recovery of $11,000,000 in cash or cash-equivalent account credits – was achieved through the skill and effective advocacy of Plaintiffs' Counsel.  Plaintiffs' Counsel's efforts to date have been without compensation of any kind and the fee has been wholly contingent upon the result achieved.

The requested fee – 30% of the fund after the deduction of expenses – is at the low end of the range awarded in class actions in this Circuit as well as numerous decisions throughout the country, and is the appropriate method of compensating counsel.  The amount requested is especially warranted in light of the substantial recovery secured for the Class, the efforts of Plaintiffs' Counsel in obtaining this result, and the significant risks in bringing the litigation.  Indeed, absent this settlement, the litigation could have continued for several more years – particularly at the appellate level – at considerable expense without the Class receiving the benefits of the settlement, thus creating the likelihood that the Class would ultimately receive less, or even no recovery.

The prosecution and settlement of this litigation required great skill and extensive efforts by Plaintiffs' Counsel. Plaintiffs' Counsel marshaled considerable resources and expended substantial efforts in the prosecution of this litigation. The settlement was only achieved after the named Plaintiffs conducted substantial effort in prosecuting this action, including, but not limited to: (1) conducting an extensive investigation in connection with the filing of the Complaint in the Litigation; (2) briefing and prevailing against defendants' motion to dismiss; (3) reviewing a voluminous amount of documents produced during discovery; and (4) consulting with experts in structured finance, securities lending, and special investment vehicles.[1] Importantly, while this work was all necessary and required, Plaintiffs' Counsel sought to litigate this case as efficiently as possible. Indeed, Plaintiffs' Counsel was able to obtain a favorable settlement before taking any depositions. As courts have widely recognized, "[o]ne thousand plodding hours may be far less productive than one imaginative, brilliant hour." G. Hornstein, *Legal Therapeutics: The Salvage Factor in Counsel Fee Awards*, 69

---

[1]   Submitted herewith in support of approval of the proposed settlement is Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds (the "Settlement Brief"), which more fully describes the history of the litigation, the claims asserted, the investigation undertaken, the negotiation and substance of the settlement, the risks of the litigation, and the reasonableness of the fee request. Also submitted herewith are declarations from Plaintiffs' counsel setting forth the time expended and expenses incurred in prosecuting the litigation. See Exs. C-G

Harv.L.Rev. 658, 660 (1956)(quoted in *In re Folding Carton Antitrust Litigation*, 84 F.R.D. 245, 261 (D.C.Ill., 1979).  *See also Lindy Bros. Builders v. American Radiator,* 540 F.2d 102 (3d Cir. 1975)(multiplier awarded based in part on class counsels' efficient use of time, even though that factor undoubtedly served to diminish the number of hours for which compensation would be forthcoming.)

Continued litigation posed significant risks for the Class, with ultimate success far from certain.  As discussed in greater detail in the Settlement Brief, continued litigation would be fraught with risks.  Defendant would continue to adamantly deny any wrongdoing and, at trial, offer testimony and expert analysis to support its contentions.  Plaintiffs would face the risk that a jury would react unfavorably to the evidence presented by them and instead believe the testimony and arguments of defendant and find in their favor.  Plaintiffs' Counsel firmly believe that the settlement obtained is a very good result for the Class under the circumstances and is a result of their creative and diligent efforts.  In light of these factors, Plaintiffs' Counsel believe that the percentage fee award requested is fair and reasonable.

In accordance with this Court's Order Granting Preliminarily Approval of Class Action Settlement, Approving Form and Manner of Notice and Setting Date for Final Approval of Settlement entered on October 9, 2013, to date an aggregate of 105 notices have been sent to potential Class Members.  *See* Declaration of

Jennifer Keough re Notice Dissemination ("Keough Decl."), Ex. A at ¶6.  The

Notice informed the Class that Plaintiffs' Counsel would make an application for

attorney fees not to exceed 30% of the Settlement Fund plus reimbursement of

expenses.  For the reasons set forth herein, Plaintiffs' Counsel respectfully submit

that the attorney fees and expenses requested are fair and reasonable under the

applicable legal standards and in light of the contingency risk undertaken, the

diligent efforts of counsel, and the substantial monetary benefits obtained.  Thus,

Plaintiffs' Counsel respectfully request that the Court should award such fees and

expenses.

## II.   AWARD OF ATTORNEY FEES

### A.   Lead Plaintiff's Counsel Are Entitled to a Fee From the Traditional Common Fund They Obtained

For over a century, the Supreme Court has recognized the "common fund"

exception to the general rule that a litigant bears his or her own attorneys' fees.

*Trs. v. Greenough*, 105 U.S. 527 (1882).  The rationale for the common fund

principle was explained in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), as

follows:

> [T]his Court has recognized consistently that a litigant or a lawyer who
> recovers a common fund for the benefit of persons other than himself or
> his client is entitled to a reasonable attorney's fee from the fund as a
> whole. . . . Jurisdiction over the fund involved in the litigation allows a
> court to prevent . . . inequity by assessing attorney's fees against the
> entire fund, thus spreading fees proportionately among those benefited
> by the suit.

4

The common fund doctrine both prevents unjust enrichment and encourages counsel to protect the rights of those who have relatively small claims.  Federal courts, therefore, have long recognized that fee awards in successful cases – such as the instant one – encourage the prosecution of other actions on behalf of individuals with valid claims, and thereby promote private enforcement of, and compliance with, important areas of federal and state law, including the federal securities laws.  *See, e.g., Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988) (it is "economic reality" that "a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid.").

In complex financial class actions, competent counsel for plaintiffs can be retained only on a contingent basis.  Consequently, a large segment of the public would be denied a remedy for violations of investors' rights if fees awarded by the courts did not fairly and adequately compensate counsel for the services provided, the risks undertaken, and the delay before any compensation is received.

**B.     The Court Should Award Attorney Fees Using the Percentage Approach**

The diligent efforts of plaintiffs' counsel have resulted in the creation of the Settlement Fund of $11,000,000.  Courts generally favor awarding fees from a common fund based upon the percentage-of-the-fund method.  *See Blum v.*

*Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class"); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165-66 (1939); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885); *Greenough*, 105 U.S. at 532.   In contrast to common fund cases, the Supreme Court has always addressed the lodestar method in the context of statutory fee-shifting cases.  The lodestar in such cases is calculated by "'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) (citation omitted).

Consistent with Supreme Court authority, the Sixth Circuit has also held that the percentage approach is a proper method for determining attorney fee awards in common fund cases.  *See, e.g., Rawlings v. Prudential Bache-Props.*, 9 F.3d 513, 515-16 (6th Cir. 1993).  In fee awards in securities class actions, which like this case aggregate the claims of multiple investors, district courts in this Circuit have virtually uniformly shifted to the percentage method in awarding fees in common fund cases because it fosters judicial economy by eliminating the detailed and time-consuming lodestar analysis.  *See In re Telectronics Pacing Sys.*, 186 F.R.D. 459, 483 (S.D. Ohio 1999) ("the preferred method in common fund cases has been to award a reasonable percentage of the fund to Class Counsel as attorneys' fees"), *rev'd on other grounds*, 221 F.3d 870 (6th Cir. 2000); *In re F&M Distribs., Inc.*

*Sec. Litig.*, No. 95-CV-71778-DT, 1999 U.S. Dist. LEXIS 11090, at *8 (E.D. Mich. June 29, 1999); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 217 (S.D. Ohio 1997); *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1278-79 (S.D. Ohio 1996).

The Sixth Circuit is not alone in its use of the percentage approach. The vast majority of other Circuits recognize the propriety of percentage fee awards in common fund cases and the shortcomings of the lodestar/multiplier method. For example, the District of Columbia Circuit held:

> We adopt a percentage-of-the-fund methodology . . . because it is more efficient, easier to administer, and more closely reflects the marketplace.

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1270 (D.C. Cir. 1993). The Eleventh Circuit rejected the lodestar approach in all common fund cases, making the percentage method mandatory. In *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), the court reversed a fee order that used the lodestar/multiplier method, relying upon statutory fee-shifting principles. The court concluded:

> After reviewing *Blum*, the [Third Circuit] Task Force Report, and the foregoing cases from other circuits, we believe that the percentage of the fund approach is the better reasoned in a common fund case.

*Id.* at 774.[2]

---

[2]    Other circuits and commentators have expressly approved the use of the percentage method. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994) ("*WPPSS*"); *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (footnote 16

**C.     The Requested Percentage is Appropriate When Compared to the Range of Percentage-of-Fund Awards**

In selecting an appropriate percentage award, the Supreme Court recognizes that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace.  *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).  If this were a nonrepresentative, private action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery.  *Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.").  Plaintiffs' Counsel's request for an award of attorneys' fees of 30% of the Settlement Fund is within – and in fact is at the low end of – the range of prior percentage awards made by many courts in this District and Circuit.  *See, e.g.*, *Morse v. McWhorter*, No. 3:97-0370 (M.D. Tenn. Mar. 12, 2004) (J. Higgins) (awarding a one-third fee of $49.5 million settlement plus expenses); *In re Sirrom Capital Corp. Sec. Litig.*, No. 3-98-0643 (M.D. Tenn. Feb. 4, 2000) (J. Campbell) (awarding one-third of a $15 million settlement plus expenses). In addition, the requested fee also

---

of *Blum* recognizes both "implicitly" and "explicitly" that a percentage recovery is reasonable in common fund cases); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 254 (October 8, 1985).

constitutes the median of fee awards in a study of securities class actions conducted by the defense-oriented firm of National Economic Research Associates ("NERA"). The study found that for settlements between $10 million and $20 million that were finalized from 1996 through June 2012, median plaintiffs' attorneys' fees are 30% of the settlement amount. Ex. B, at 31. Counsel's request here is rendered all the more reasonable since it constitutes 30% of the settlement fund *after* the deduction of litigation expenses.

### D. Consideration of the Relevant Factors Justifies an Award of a Thirty Percent Fee in This Case

Plaintiffs' Counsel seek an award of 30% from the fund that they created and submit such an award is reasonable and appropriate under the circumstances. The ultimate task for the court is to ensure that counsel is fairly compensated for the work performed and the result achieved. *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 516 (6th Cir. 1993). Consideration of the factors enumerated by the Sixth Circuit in determining the fairness of an attorney fee request confirms that a 30% fee award is justified under the circumstances of this case and the fee is fair and reasonable.

### 1. The Value of the Benefit Achieved

Plaintiffs' Counsel have secured a settlement that provides for a substantial and certain cash or cash-equivalent payment of $11,000,000 for the benefit of the Class. Courts have consistently recognized that the result achieved is a major factor

to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Rawlings*, 9 F.3d at 516 (a percentage of the fund will compensate counsel for the result achieved); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd,* 899 F.2d 21 (11th Cir. 1990). The $11,000,000 cash and cash-equivalent settlement here provides a substantial and certain benefit to the Class. This favorable settlement was achieved as a result of the creative prosecutorial and investigative efforts of Plaintiffs' Counsel, including the contentious motion practice and settlement negotiations detailed in the Settlement Brief. *See In re Folding Carton Antitrust Litigation*, 84 F.R.D. at 261 (creative, efficient hours more valuable than a thousand plodding hours.) As a result of this settlement, the Class Members will benefit and receive compensation for a portion of their losses and avoid the very real risk of no recovery in the absence of a settlement.

### 2.    Public Policy Considerations

Plaintiffs' counsel in complex financial class action litigation are invariably retained on a contingent basis, largely due to the significant commitment of time and expense required. The typical class representative is unlikely to be able to pursue long and protracted litigation at his or her own expense, particularly with

the knowledge that others similarly situated will be able to "free-ride" on these efforts at no cost or risk to themselves. This is especially true where, as here, the claims pertain to a specific type of investment – a "special investment vehicle" – held in a particular type of investment pool – the cash collateral invested as part of a security lending program. The number of potential experts regarding these issues is severely limited, making their retention cost-prohibitive for all but the largest claims. Furthermore, the significant expense combined with the high degree of uncertainty of ultimate success means that contingent fees are virtually always required for such cases. Adequate compensation to encourage attorneys to assume the risk of litigation is in the public interest. Indeed, without adequate compensation for plaintiffs' counsel, victims of malinvestment would be prevented from pursuing their claims. Thus, an important factor is "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others." *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974); s*ee also White v. Abrams*, 495 F.2d 724, 730-31 (9th Cir. 1974); *Bleznak v. C.G.S. Scientific Corp.*, 387 F. Supp. 1184, 1189 (E.D. Pa. 1974). In *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985), Judge Keenan described the public policy considerations involved in adequately compensating class action lawyers in financial class actions:

> The federal securities laws are remedial in nature and, in order to effectuate their statutory purpose of protecting

> investors and consumers, private lawsuits should be encouraged.
>
> * * *
>
> Fair awards in cases such as this encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance.

*Id*. at 750-51, *aff'd*, 798 F.2d 35 (2d Cir. 1986).   Other courts have expressed

similar views.  *See*, *e.g., Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 640

F. Supp. 697, 702 (S.D. Ohio 1986); *In re Dun & Bradstreet Credit Servs.*

*Customer Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990).  Without the willingness

of Plaintiffs' Counsel to assume that task, members of the Class would not have

recovered anything, let alone the substantial recovery obtained here for their

benefit.

### 3.      The Risks of Litigation and the Contingent Nature of the Fee

A determination of a fair fee must include consideration of the contingent

nature of the fee and the difficulties that were overcome in obtaining the

settlement.

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent

representation for plaintiffs who could not afford to pay on
an hourly basis regardless whether they win or lose.

*WPPSS*, 19 F.3d at 1299.

In awarding counsel's attorneys' fees in *In re Prudential-Bache Energy
Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394 (E.D. La. May 18, 1994),
the court noted the risks that plaintiffs' counsel had taken:

> Although today it might appear that risk was not great based
> on Prudential Securities' global settlement with the Securities
> and Exchange Commission, such was not the case when the
> action was commenced and throughout most of the litigation.
> Counsel's contingent fee risk is an important factor in
> determining the fee award. Success is never guaranteed and
> counsel faced serious risks since both trial and judicial
> review are unpredictable. Counsel advanced all of the costs
> of litigation, a not insubstantial amount, and bore the
> additional risk of unsuccessful prosecution.

*Id*. at *6.

Plaintiffs' Counsel prosecuted this action on a wholly contingent basis.
There are numerous cases where plaintiffs' counsel in contingent cases such as this
– after the expenditure of thousands of hours – have received no compensation.
Plaintiffs' Counsel are aware of many hard-fought lawsuits where, because of the
discovery of facts unknown when the case was commenced, or changes in the law
during the pendency of the case, or a decision of a judge or jury following a trial
on the merits, excellent professional efforts of members of the plaintiffs' bar
produced no fee for counsel. There are many appellate decisions affirming

13

summary judgment and directed verdicts for defendants in financial class actions.[3]

Even plaintiffs who succeed at trial may find their judgment overturned on appeal.

For example, plaintiffs' lawyers lost a substantial investment of time and money in

a large investor class action in *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir.

1997), when the Court of Appeals reversed a jury verdict of $81 million against an

accounting firm after a 19-day trial in Jacksonville, Florida.[4]

Securities lending litigation is especially fraught with risk at the trial stage.

For example, this past August, a jury in the United States District Court for the

District of Minnesota heard a six-week trial in a case brought by several

---

[3] *See, e.g., Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Green v. Nuveen Advisory Corp.*, 295 F.3d 738 (7th Cir. 2002); *Geffon v. Micrion Corp.*, 249 F.3d 29 (1st Cir. 2001); *Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999); *Longman v. Food Lion, Inc.*, 197 F.3d 675 (4th Cir. 1999); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999); *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542 (6th Cir. 1999); *Levitin v. Painewebber, Inc.*, 159 F.3d 698 (2d Cir. 1998); *Silver v. H&R Block*, 105 F.3d 394 (8th Cir. 1997).

[4] *See also, e.g.*, *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig.*, No. C-84- 20148-(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (verdict against two individual defendants, but court vacated judgment on motion for judgment notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for judgment n.o.v. was denied, on appeal the judgment was reversed and the case was dismissed – after 11 years of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (multimillion dollar judgment reversed after lengthy trial); *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1988) (reversing plaintiffs' jury verdict for securities fraud).

participants in Wells Fargo's securities lending program.  The plaintiffs' claims in that case were broadly similar to the claims in this case.  The jury granted Wells Fargo a "no-cause" verdict.  *BCBS v. Wells Fargo*, No. 11-2529 (D. Minn. August 9, 2013).

### 4.    The Value of Services on an Hourly Basis

A considerable effort on the part of Plaintiffs' Counsel was required to obtain the settlement for the benefit of the Class.  Plaintiffs' Counsel and other counsel for plaintiffs have committed over 6,300 hours in the prosecution of this Litigation.  The resulting "lodestar" is $3,329,680.25.  This is very close to the requested fee: $11,000,000 minus the requested expenses of $127,516.02 results in a total of $10,872,483.98; 30% of this sum is $3,261,745.19. Although courts commonly award a "multiplier," or enhancement, in cases of this type,[5] here the

---

[5] The multiplier is the ratio of the awarded fee to counsel's lodestar.  In one frequently-cited case, a District Court found that "multipliers should compensate counsel for the risk they incurred in bringing a case in which their compensation was contingent on their success, should recognize any extraordinary performance by particular counsel and should encourage the filing of meritorious class actions." *In re Superior Beverage/Glass Container Consolidated Pretrial*, 133 F.R.D. 119, 131 (N.D. Ill. 1990).  Courts in this *See, e.g., In re Lason, Inc. Sec. Litig.*, No. 99-CV-76079, Order and Final Judgment (E.D. Mich. Mar. 31, 2003) (Tarnow, J.) (awarding fees that amount to a multiplier of 1.8 multiplier); *In re Cardizem CD Antitrust Litig.*, No. 99-md-1278, Order (E.D. Mich. Nov. 26, 2002) (Edmunds, J.) (multiplier of 3.7); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503-04 (E.D. Mich. 2000) (2.49 multiplier); *F&M*, 1999 U.S. Dist. LEXIS 11090, at *19-20 (multiplier of 1.35).  The fact that the multiplier here is negative shows that the requested fee is inherently reasonable.

fee requested is actually less than the aggregate lodestar, reflecting a negative multiplier of .98

### 5.    The Complexity of the Litigation

Prosecution of any complex financial class action presents inherently complex and novel issues. Courts have recognized this complexity in the context of securities fraud cases:

> The benefit to the class must also be viewed in its relationship to the complexity, magnitude, and novelty of the case. . . .

> Despite years of litigation, the area of securities law has gained little predictability. There are few "routine" or "simple" securities actions. Courts are continually modifying and/or reversing prior decisions in an attempt to interpret the securities law in such a way as to follow the spirit of the law while adapting to new situations which arise. Indeed, many facets of securities law have taken drastically new directions during the pendency of this action. . . .

> The complexity of a case is compounded when it is certified as a class action.  .  .  .  Management of the case, in and of itself, is a monumental task for counsel and the Court.

*Miller v. Woodmoor Corp.*, Nos. 74-F-988, 76-F-567, 1978 WL 1146, at *4 (D. Colo. Sept. 28, 1978);  *see also In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 632 (D. Colo. 1976) (securities litigation involves "unique and substantial issues of law in the technical area of SEC Rule 10b-5, . . . difficult, complex and oft-disputed class action questions, and difficult questions regarding computation of damages").  The issues raised here were, if anything, more complex than in a securities fraud case – at least securities fraud plaintiffs have a wide body of

16

reported law on which to draw in prosecuting their claims, while there is only limited law addressing securities lending claims.  This case raised multiple specific, novel issues, including but not limited to the foreseeability of the 2007-2008 financial crisis, the amount of risk appropriate for securities lending cash collateral investments, the appropriate methods for managing such risk, the point in time during 2007 at which prudent investment professionals should have been aware of the risks to the structured finance market, the specific market for Sigma notes during 2007 and 2008, and the appropriate measure of damages should a securities lending program manager be found liable for the malinvestment of cash collateral.

### 6.    The Quality of the Representation

Plaintiffs' Counsel are nationally known leaders in the fields of investment class actions and complex litigation.  The quality of the representation is demonstrated by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution of the action.  The quality of opposing counsel is also important when the court evaluates the services rendered by plaintiffs' counsel.  *See, e.g., Warner Commc'ns*, 618 F. Supp. at 749; *King Res.*, 420 F. Supp. at 634; *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1351 (N.D. Ill. 1974). Nationally known, prominent, and extremely capable counsel represented defendant and vigorously defended this action.  The ability of Plaintiffs' Counsel

to obtain a favorable result for the Class in the face of such formidable opposition further evidences the quality of their work.

Thus, there can be no dispute that all of the factors discussed above weigh in favor of the fee and expense award requested, and that the Court should grant Plaintiffs' Counsel's fee and expense application in its entirety.

### E.    Plaintiffs' Counsel's Expenses are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained

Plaintiffs' Counsel also request reimbursement of expenses incurred by Plaintiffs' Counsel in connection with the prosecution of this litigation.  Plaintiffs' Counsel have submitted separate declarations in support of their expense request. Plaintiffs' Counsel and other counsel for plaintiffs have incurred expenses in the aggregate amount of $127,516.02 in prosecuting this litigation.

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted).  Therefore, it is proper to reimburse reasonable expenses even though they are greater than taxable costs. *Id*; s*ee also Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir. 1993) (expenses reimbursable if they would normally be billed to client);

*Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if customary to bill clients for them); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (citation omitted). The categories of expenses for which counsel seek reimbursement here are the type of expenses routinely charged to hourly clients and, therefore, should be reimbursed out of the common fund.

A component of Plaintiffs' Counsel's expenses is the cost of experts. Plaintiffs' Counsel retained experts who consulted on structured finance, securities lending collateral investment, and special investment vehicles. These experts provided significant services on behalf of the Class and their expenses were necessarily incurred for the successful prosecution of this litigation. Plaintiffs' counsel was also required to engage the services of an expert in computer forensic analysis in order to procure electronically-stored data for discovery production.

Plaintiffs' Counsel also incurred other expenses necessary to achieve the result obtained. It is standard practice for attorneys to use computerized research to assist them in researching legal and factual issues. These services allowed counsel access to various Sigma-related documents, financial reports, and media stories. Plaintiffs' Counsel were also required to travel in connection with this

19

litigation, and thus incurred the related costs of meals, lodging, and transportation. Counsel in this case traveled to appear before the Court for hearings and to attend mediation.  Other expenses that were necessarily incurred in the prosecution of this litigation include expenses for mediation fees, photocopying, filing and witness fees, postage and overnight delivery, and telephone and telecopier expenses. Notably, by successfully negotiating a favorable settlement, Plaintiffs' Counsel was able to avoid many of the expenses of protracted litigation, such as those associated with depositions.

## III.  CONCLUSION

For all of the foregoing reasons, Plaintiffs' Counsel respectfully request that the Court approve Plaintiffs' Counsel's application for attorneys' fees and reimbursement of expenses.

**THE MILLER LAW FIRM, P.C.**
Attorneys for Plaintiffs

By: /s/ E. Powell Miller
E. POWELL MILLER (P39487)
MARC L. NEWMAN (P51393)
CHRISTOPHER D. KAYE (P61918)
950 West University Drive, Suite 300
Rochester MI 48307
248-841-2200
epm@millerlawpc.com

**SULLIVAN, WARD, ASHER & PATTON, P.C.**
Attorneys for Plaintiffs

By: /s/ Gerard J. Andree (w/ permission)
GERARD J. ANDREE (P25497)
MICHAEL J. ASHER (P39347)
25800 Northwestern Highway
1000 Maccabees Center
Southfield, MI 48075
Telephone: 248.746.2731
Facsimile: 248.746.4805
gandree@swappc.com

**GLANCY BINKOW & GOLDBERG LLP**
Attorneys for Plaintiffs
Lionel Glancy
Peter Binkow
Glancy Binkow & Goldberg LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067

**ROBINS GELLER RUDMAN & DOWD LLP**

Paul J. Geller
Stephen R. Astley
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364

Dated: November 14, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2013, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will automatically send notification of such filing to all attorneys of record registered for electronic filing.

Respectfully submitted,

**THE MILLER LAW FIRM, P.C.**

By: */s/ E. Powell Miller*
THE MILLER LAW FIRM, P.C.
E. Powell Miller (P39487)
Christopher D. Kaye
Marc L. Newman
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
GLANCY BINKOW & GOLDBERG LLP
Lionel Z. Glancy
Peter A. Binkow
Ex Kano S. Sams II
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Lead   Counsel   and   Class Counsel*